UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES J. CARTER,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-492-TLS-JEM |

OPINION AND ORDER

James J. Carter, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint to determine whether it states a claim for relief.[1] To proceed beyond the pleading stage, a complaint must state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Carter is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Carter is an inmate at Indiana State Prison (ISP). He claims that prior to his incarceration, he suffered a serious gunshot wound to his leg. He claims that since his arrival at ISP in 2017, he has had pain and other problems with his leg. He claims that in 2023, he began to experience severe pain, swelling, and discoloration in his leg. He claims Dr. Nancy Marthakis saw him several times but did not provide effective treatment or send him to an outside specialist. He

---

[1] Carter was previously ordered to show cause why he did not pay the initial partial filing fee. (ECF 4.) The court has since received the fee. (ECF 6.) No further action is required by Carter related to this issue and the case can proceed to screening.

further claims that Medical Director Sherri Fritter was aware of the situation with his leg but did nothing to refer him to a specialist. In September 2023, he was finally sent to an outside hospital and it was determined that he had a severe infection in his leg requiring surgery. After the surgery he continued to suffer severe pain, but he claims Dr. Marthakis would only give him Tylenol, which did not adequately address his pain. He claims he wrote numerous letters to Warden Ron Neal, Deputy Warden Dawn Buss, and Unit Team Manager Pam Baine to complain about his health care, but received no response. Based on these events, he sues the above individuals for monetary damages.

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* at 104–06. A medical need is "serious" if it is one that a physician has diagnosed as requiring treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, "[d]eliberate indifference occupies a space slightly below intent and poses . . . an exacting standard requiring something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (cleaned up).

Inmates are "not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted). Nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to

"reasonable measures to meet a substantial risk of serious harm." *Id*. Because there is no one right way to practice medicine in the prison setting, courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (cleaned up). At the same time, a prisoner is not required to show that he was "literally ignored" by medical staff to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). A provider's "choice of the easier and less efficacious treatment" can amount to deliberate indifference. *Id.* (cleaned up). Likewise, "delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (cleaned up).

Giving Carter the inferences to which he is entitled at this stage, he plausibly alleges a serious medical condition, namely, chronic problems with his leg resulting from a prior gunshot wound. On the second prong, he claims Dr. Marthakis and Medical Director Fritter were both aware of the problems with his leg for months, but they refused to provide adequate treatment and delayed in sending him to a specialist. Ultimately his leg became severely infected, necessitating surgery. At this stage, he has plausibly alleged a deliberate indifference claim against the two medical providers.[2]

[2] The court is cognizant that some of the relevant events appear to have occurred outside the two-year window that applies to actions filed under 42 U.S.C. § 1983. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (holding that 42 U.S.C. § 1983 actions borrow the statute of limitations for state personal injury claims, which in Indiana is two years). However, dismissing a complaint as untimely at the pleading stage is "an unusual step" that is appropriate only when it is "clear from the face of the complaint" that the claims are "hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Cap. Mgmt.*, 559 F.3d 671, 674–75 (7th Cir. 2009). That standard is not met here, as at least a portion of the events occurred within the limitations period, including Carter's September 2023 surgery, which he claims resulted from the lack of proper treatment over the course of years.

As for the non-medical providers, they cannot be held liable for damages merely because they oversee operations at the prison. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Carter claims he wrote to them to complain about his medical care, but this alone does not give rise to a claim for damages. As the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. . . . . [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. There is insufficient factual content from which the court could plausibly infer that any of these individuals were responsible for providing medical care to inmates, or that they stood in the way of the medical professionals who were making decisions about Carter's care.[3] "The most one can say is that [they] did nothing, when [they] might have gone beyond the requirements of [their] job and tried to help him" with his medical issues. *Id.* at 596. This does not state a claim for damages under section 1983.[4] *Id.* These defendants will be dismissed.

For these reasons, the court:

[3] Carter states that he later learned the Warden or Deputy Warden had to approve a visit to an outside medical provider, but he does not allege that they denied any such request. As he describes it, his medical providers at the prison failed to refer him for outside treatment until September 2023, when his leg was severely infected. At that point, he was taken to an outside facility. The court cannot infer a plausible constitutional claim on this ground.

[4] The Warden could be a proper defendant for purposes of a claim for prospective injunctive relief, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), but Carter does not ask for any injunctive relief in his complaint. (*See* ECF 1 at 10.)

(1) GRANTS the plaintiff leave to proceed against Dr. Nancy Marthakis and Medical Director Sherri Fritter in their personal capacity for money damages for deliberate indifference to the plaintiff's need for medical care for his leg in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Warden Ron Neal, Deputy Warden Dawn Buss, and Unit Team Manager Pam Baine as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis and Medical Director Sherri Fritter at Centurion Health and to send them a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(6) ORDERS Dr. Nancy Marthakis and Medical Director Sherri Fritter to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 2, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRIGNMANN
UNITED STATES DISTRICT COURT